**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| ROXANNE FEME FATEL | § | |
| JOGANIK and DARLINA R. | § | |
| ANTHONY, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | CASE NO. 6:19-CV-517-JCB-KNM |
| EAST TEXAS MEDICAL | § | |
| CENTER, OLYMPIC SWIMMING | § | |
| POOL, JERAMIE HINOJOSA, | § | |
| ANNA GOUJON, and BILL | | |
| JENNINGS, | | |
| | | |
| *Defendants*. | | |

**REPORT & RECOMMENDATION OF**
**THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. No. 56) and Plaintiffs' Response (Doc. No. 70). The case is referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636.  Having considered the motion and response, the undersigned recommends that Defendant's Motion to Dismiss (Doc. No. 56) be **GRANTED IN PART.**

**BACKGROUND**

Plaintiffs, Roxanne feme FateL Joganik and Darlina Anthony, proceeding *pro se* and *in forma pauperis*, initiated this lawsuit on November 4, 2019 against Rehabilitation Hospital, LLC d/b/a UT Health East Texas ("Defendant").[1]

---

[1] Plaintiffs originally named East Texas Medical Center and Olympic Swimming Pool as Defendants. Compl., Doc. No. 1. Defendant states that "East Texas Medical Center" and "Olympic Swimming Pool" are part of the same entity: Rehabilitation Hospital, LLC d/b/a UT Health East Texas. Def.'s Mot. Dismiss, Doc. No. 56 at 1 n.1. For ease of

1

In their original complaint, Plaintiffs alleged violations of their civil rights and various federal statutes in connection with their use of Defendant's facilities.[2] Plaintiffs each filed a motion to proceed *in forma pauperis* and filed their first amended complaint.[3] The Court granted the motions to proceed *in forma pauperis* and ordered Plaintiffs to refile an amended complaint to address certain pleading deficiencies inherent in their first amended complaint.[4] The Court noted that Plaintiffs failed to state a claim under their then-existing causes of action: 22 U.S.C. § 7102 of the Trafficking Victims Protection Act, Title VII of the Civil Rights Act, and the Thirteenth and Fourteenth Amendments.[5] On December 16, 2019, Plaintiffs filed their second amended complaint.[6]

Defendant filed a motion to dismiss under FED. R. CIV. P. 12(b)(1) and 12(b)(6), or in the alternative, a motion for a more definite statement under FED. R. CIV. P. 12(e).[7] When Plaintiffs did not timely respond, the Court ordered Plaintiffs to show cause as to why Defendant's motion should not be considered unopposed.[8] Plaintiffs filed a response to the order, and then filed a third amended complaint and a motion for default judgment.[9] The Court struck the complaint, ordered repleading, and denied the motion for default judgment.[10] Plaintiffs timely filed their fourth amended complaint.[11]

---

reference in this Report and Recommendation, Defendant will be referred to in the singular tense and by its preferred name.
[2] Pls.' Original Compl., Doc. No. 1.
[3] Pls.' Mots. Leave to Proceed *In Forma Pauperis*, Doc. Nos. 2, 6; Pls.' First Amend. Compl., Doc. No. 5.
[4] Order Grant Mots. Leave to Proceed *In Forma Pauperis,* Doc. No. 9; Order Pls. Replead Compl., Doc. No. 10.
[5] Order Pls. Replead Compl., Doc. No. 10.
[6] Pls.' Second Amend. Compl., Doc. No. 15.
[7] Def.'s Mot. Dismiss Pls.' Second Amend. Compl., Doc. No. 25.
[8] Order Pls. Show Cause, Doc. No. 26.
[9] Pls.' Resp. Show Cause, Doc. No. 27; Pls.' Third Amend. Compl., Doc. No. 29; Pls.' Mot. Default. J., Doc. No. 31.
[10] Order Strike Pls.' Third Amend. Compl., Doc. No. 33; Order Deny Pls.' Mot. Default J., Doc. No. 34.
[11] Pls.' Fourth Amend. Compl., Doc. No. 38.

Through their operative fourth amended complaint, Plaintiffs allege that the treatment they received at Defendant's facilities constitutes discrimination.[12] At the outset, the Court notes that Plaintiffs' complaint is comprised of fourteen pages of "rambling, scattered arguments, and factual allegations which almost certainly violate Rule 8." *Gordan v. Green*, 602 F.2d 743, 745–47 (5th Cir. 1979). It is replete with numerous conclusory statements and contains repetitious, verbose, and convoluted arguments that mix allegations of relevant facts, irrelevant facts, political argument, and legal argument in a chaotic and confusing way. While Plaintiffs' complaint and submissions are lengthy and contain numerous recitations of various laws and the Constitution, the allegations fail to plainly articulate the basis for their federal claims in accordance with Rule 8. Viewing the allegations in the light most favorable to Plaintiffs, it appears that Plaintiffs are alleging discrimination violations under the following causes of action: Title VI of the Civil Rights Act of 1964; Title IX of the Education Amendments of 1972; Section 504 of the Rehabilitation Act of 1973; the Age Discrimination in Employment Act of 1967; Title VII of the Civil Rights Act of 1964; the Thirteenth and Fourteenth Amendments to the US Constitution; and Section 1557 of the Patient Protection and Affordable Care Act.[13] Specifically, Plaintiffs allege that they were mistreated because of Ms. Joganik's status as a transgender woman.[14] Plaintiffs state that "[t]his action is brought by the Best Interest of a slave population of the United States of America the Transgender community."[15]

The facts alleged in Plaintiffs' complaint are summarized herein. Plaintiffs both identify as female; specifically, Ms. Joganik is a transgender woman, and Ms. Anthony is a cisgender[16] or

---

[12] *See generally* Pls.' Fourth Amend. Compl., Doc. No. 38; Pls.' Show Cause, Doc. No. 38-1.
[13] *See generally* Pls.' Fourth Amend. Compl., Doc. No. 38.
[14] Pls.' Fourth Amend. Compl., Doc. No. 38.
[15] Pls.' Fourth Amend. Compl., Doc. No. 38 at 1.
[16] *Cisgender*, "of, relating to, or being a person whose gender identity corresponds with the sex the person had or was identified as having at birth." MERRIAM-WEBSTER DICTIONARY, http://www.merriam-webster.com (last visited Oct. 6, 2021).

biological woman.[17] Plaintiffs previously visited Defendant's hospital, on unspecified dates, to use the swimming pool and obtain medical care.[18] While using Defendant's facility, Plaintiffs assert Defendant discriminated against them during multiple incidents. First, Plaintiffs allege that Defendant's employees and "Radical Baptist Woman Haters" attacked them.[19] Second, Plaintiffs allege that Defendant "verbal[ly] abused" them and "forced" or "asked [them] to leave the . . . swimming area[.]"[20] Plaintiffs state that due to this incident, they were deprived of medical therapy at Defendant's facility.[21] Third, Plaintiffs allege that Defendant reprimanded them for purportedly using the same shower in the swimming pool locker room.[22]

In addition, Ms. Joganik alleges that she is a "high risk patient" and that Defendant refused to set an appointment for her to receive a medically necessary breast exam.[23] Specifically, she asserts that the administrative employee she first spoke to would not make an appointment for her and required her to speak to another employee who disrespected her gender identity.[24] Plaintiffs claim that Defendant's gender identity discrimination caused a seven month delay of Ms. Joganik's breast exam.[25] Plaintiffs articulate that Defendant's refusal to set an appointment for Ms. Joganik's breast exam has been "an ongoing issue since for over four (4) years before Dec[] 31, 2016," and that they have "worked for over [six] (6) years to correct these problems."[26]

---

[17] Pls.' Fourth Amend. Compl., Doc. No. 38 at 3; Pls.' Show Cause, Doc. No. 70 at 2.
[18] *See* Pls.' Fourth Amend. Compl., Doc. No. 38 at 2.
[19] Pls.' Fourth Amend. Compl., Doc. No. 38 at 1.
[20] Pls.' Fourth Amend. Compl., Doc. No. 38 at 1.
[21] Pls.' Fourth Amend. Compl., Doc. No. 38 at 1, 2.
[22] Pls.' Fourth Amend. Compl., Doc. No. 38 at 6.
[23] Pls.' Fourth Amend. Compl., Doc. No. 38 at 2.
[24] Pls.' Fourth Amend. Compl., Doc. No. 38 at 2.
[25] Pls.' Fourth Amend. Compl., Doc. No. 38 at 2.
[26] Pls.' Fourth Amend. Compl., Doc. No. 38 at 2.

Ms. Joganik further claims that she was misgendered[27] "even with a female hospital tag during many visits," and that the administrative staff failed to fix the problem and "refused to protect [her] gender rights."[28] Plaintiffs additionally allege that one of Defendant's doctors performed a rectal exam that was traumatic for Ms. Anthony.[29] Plaintiffs state that the doctor told Ms. Anthony "[i]t looks like you have a Barbie doll in [your] [a]ss," and that he subsequently conducted the exam "without warning[.]"[30] Plaintiffs also submit that the doctor treated Ms. Anthony for the underlying medical issue that made the exam necessary.[31] Plaintiffs claim that because Defendant works with Medicare, any discrimination based on race, color, national origin, disability, age, or sex (including gender identity) is against the law.[32] Finally, Plaintiffs allege that Defendant's discrimination is retaliation against Ms. Joganik for winning a prior discrimination case against a different party, and assert that Defendant's facility is under the control of the Baptist and Catholic churches for the purpose of discrimination against LGBTQ+ people.[33] As a result, Plaintiffs state they are seeking declaratory and injunctive relief and monetary damages of "$7.7 million [U.S.] [d]ollars to ensure that no private or public [h]ealth company will never try to do this kind of Serration [sic] and slavery."[34]

On April 12, 2021, Defendant filed a second motion to dismiss.[35] Defendant asserts that the pleadings are vague, ambiguous, unclear, and fail to include any coherent factual allegations supporting any actionable conduct. Defendant argues that, despite Plaintiffs' multiple filings and

---

[27]*Misgender*, "To identify the gender of (a person, such as a transsexual or transgender person) incorrectly (as by using an incorrect label or pronoun)" MERRIAM-WEBSTER DICTIONARY, http://www.merriam-webster.com (last visited Oct. 1, 2021).
[28] Pls.' Fourth Amend. Compl., Doc. No. 38 at 3.
[29] Pls.' Fourth Amend. Compl., Doc. No. 38 at 3.
[30] Pls.' Fourth Amend. Compl., Doc. No. 38 at 3.
[31] Pls.' Fourth Amend. Compl., Doc. No. 38 at 3.
[32] Pls.' Fourth Amend. Compl., Doc. No. 38 at 3.
[33] Pls.' Fourth Amend. Compl., Doc. No. 38 at 2–3.
[34] Pls.' Fourth Amend. Compl., Doc. No. 38 at 7–9.
[35] Def.'s Mot. Dismiss, Doc. No. 56.

attempts to state their claims, they have not been able to satisfy the pleading requirements. Defendant construes Plaintiffs' complaint to state claims for relief under: (1) Title VI of the Civil Rights Act of 1967 ("Title VI"); (2) the Age Discrimination in Employment Act ("ADEA"); (3) Title IX of the Education Amendments of 1972 ("Title IX"); (4) Section 504 of the Rehabilitation Act ("Section 504"); (5) Section 1557 of the Affordable Care Act ("ACA") or ("Section 1557"); and (6) the Thirteenth and Fourteenth Amendments to the U.S. Constitution.

To the extent Plaintiffs request declaratory and injunctive relief, Defendant argues that Plaintiffs lack standing to bring those claims. Defendant argues that there is no injury in fact and therefore, no ability for the Court to provide redress. Defendant contents that Plaintiffs have failed to plead any concrete intent to return to Defendant's facility or that they are otherwise affected by Defendant's alleged statutory violations in a concrete way. Defendant argues specifically that Ms. Anthony has failed to allege that since December 31, 2016, she has sought, received, or been denied services from Defendant. Defendant submits that Ms. Joganik's allegation that she was denied services "on or about Nov. 19th and 20th," without indicating which year, is at best, a superficial attempt to manufacture an ongoing harm. Defendant argues Plaintiffs' injury, if any, is entirely speculative and hypothetical. As such, Defendant seeks dismissal of Plaintiffs' equitable relief claims for lack of subject matter jurisdiction.

Defendant further asserts that Plaintiffs' claims fail under each potential cause of action "due to fatal (and often, incurable) defects" contained in the complaint.[36] To the extent Plaintiffs seek relief under the Thirteenth or Fourteenth Amendments to the U.S. Constitution, Defendant argues that this Court has previously dismissed both of those claims because the Thirteenth

---

[36] Def.'s Mot. Dismiss, Doc. No. 56 at 8.

Amendment does not provide for a direct cause of action against private parties and Plaintiffs fail to demonstrate how the Fourteenth Amendment applies to the Defendant, a non-state actor.

To the extent that Plaintiffs seek relief under Title VI, ADEA, Title IX, Section 504, and Section 1557, Defendant argues that Plaintiffs fail to allege facts that would support a claim based on the protected grounds of discrimination: race, color, and national origin (under Title VI); sex (under Title IX); age (under the ADEA); and disability (under Section 504 of the Rehabilitation Act). At best, Defendant submits that Plaintiffs allege they were denied treatment or therapy based on their gender identity. However, Defendant calls into doubt the viability of their Section 1557 claim for two reasons. First, Defendant notes the uncertainty of the applicable definition of sex discrimination under Section 1557.[37] Second, Defendant asserts that Plaintiffs have not pleaded sufficient facts to demonstrate either that Defendant is a covered "health program or activity" or in receipt of qualifying "federal financial assistance." Defendant asserts all three are necessary for Plaintiffs to plead a discrimination claim under Section 1557. Defendant seeks dismissal of the complaint for failure to state a claim upon which relief can be granted.

In response to the Court's second show cause order as to why Defendant's motion should not be considered unopposed, Plaintiffs filed their response, asserting that "the Plaintiff is APPOSED [sic] to dismissal of the case for any reason other th[a]n a 'UNOPPOSED' Default Judgement in favor of [the] Plaintiff."[38] In their response, Plaintiffs did not overtly or otherwise respond to Defendant's assertions that they have not plead a viable cause of action under Title VI, ADEA, Title IX, and the Thirteenth or Fourteenth Amendments to the U.S. Constitution.

---

[37] Def.'s Mot. Dismiss, Doc. No. 56 at 11, n. 53.
[38] Order Pls.' Show Cause, Doc. No. 65; Pls.' Show Cause, Doc. No. 70.

Presumably as to Section 504, Plaintiffs state that "[Ms. Joganik's] [d]isability is an [e]nlarged heart with open valve" and that "[e]strogen may have saved [her] life."[39] Plaintiffs assert that they joined the pool due to its proximity to a doctor and allege that "a sexy person like me being trans destroyed [Defendant's] private Trump Towers type place." Seemingly in response to Defendant's assertion that Plaintiffs did not demonstrate an ongoing harm, Plaintiffs state that [Defendant] has "had 5 years [of] being ask[ed] every year 2 or 3 time[s] can I swim [,] can we work this out."[40] Plaintiffs state that Section 1557 is applicable because sex is a protected class and assert that Defendant receives federal funds.[41] Plaintiffs seek a declaration of "[t]he transgender people as a protected class and grant all relief every American Female should have and stop all religious persecution from the [B]aptist church."[42] Plaintiffs further state that they seek an injunction for "[a] breast exam to protect Roxanne from Cancer" and believe an injunction is an appropriate affirmative action in this case.[43]

## LEGAL STANDARD

### A. Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, possessing only powers that are conferred by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536

---

[39] Pls.' Show Cause, Doc. No. 70 at 1.
[40] Pls.' Show Cause, Doc. No. 70 at 2.
[41] Pls.' Show Cause, Doc. No. 70 at 2.
[42] Pls.' Show Cause, Doc. No. 70 at 2.
[43] Pls.' Show Cause, Doc. No. 70 at 2.

F.3d 469, 473 (5th Cir. 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).  A motion to dismiss under Rule 12(b)(1) "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss.*, 143 F.3d at 1010). In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B.  Rule 12(b)(6)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010); *Ballard v. Wall*, 413 F.3d 510, 514 (5th Cir. 2005). The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must include facts that "raise a right to relief above the speculative level," and into the "realm of plausible liability." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 127 S.Ct. 1955, 1965 and 1966 n.5 (2007). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Pleadings filed by a *pro se* litigant are to be liberally construed when determining whether they have stated a viable claim. *McNeil v. United States*, 508 U.S. 106, 113 (1993). However, "[e]ven a liberally construed *pro se* civil rights complaint ... must set forth facts giving rise to a claim on which relief may be granted." *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir.1993). If the court determines that a plaintiff has pleaded his or her best case, a district court does not err in dismissing a *pro se* complaint with prejudice. *Jones v. Greninger*, 188 F.3d 322, 326–27 (5th Cir. 1999) (citing *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)).

## DISCUSSION

Defendant seeks dismissal of the complaint for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) and for failure to state a claim upon which relief may be granted pursuant to FED. R. CIV. P. 12(b)(6). Defendant's Rule 12(b)(1) motion challenges Plaintiffs' standing to bring claims for declaratory or injunctive relief. Because courts must generally address jurisdiction before reaching the merits, the Court will address the question of standing first. *ESI/Employee Solutions, L.P. v. City of Dallas*, 450 F. Supp. 3d 700, 713 (E.D. Tex. Mar. 30, 2020) (Jordan, J.).

### A. Article III Standing

Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs, as the party invoking federal jurisdiction, bear the burden of establishing three essential elements: (1) "an

injury in fact; that is, the invasion of a legally protected interest that is concrete and particularized and actual or imminent;" (2) "a causal connection between the injury and the conduct complained of;" and (3) "a showing that it is likely, not merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 560–61.

Defendant contends that the first and third elements—injury in fact and redressability—are lacking. Defendant asserts that Plaintiffs' injury, if any, is based solely on a past statutory violation and any prospective injury is entirely speculative and hypothetical. Doc. No. 56 at 6–7. Thus, Defendant argues, Plaintiffs have no injury in fact. Defendant further argues that Plaintiffs fail to demonstrate a redressable injury. Doc. No. 56 at 7. A "concrete" injury is one that "actually exist[s]," although it may be intangible. *Spokeo*, 136 S.Ct. at 1548-49. To allege standing to seek equitable relief, a plaintiff must allege that the defendant either (1) poses an imminent threat of harm or (2) is currently inflicting harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Friends of the Earth, Inc. v. Laidlaw Envt. Servs. (TOC), Inc.*, 528 U.S. 167, 184-85 (2000).

The challenged relief sought by Plaintiffs in their fourth amended complaint is equitable in nature. Specifically, Plaintiffs seek: (1) a declaration that "Defendant[']s discriminatory practices, as alleged herein, violate the Affordable [C]are [A]ct and subvert[t] 22 U.S. Code 7102[] And Gender Identity;" (2) a permanent injunction that the Court would enjoin Defendant from discriminating against others because of sex, along with engaging in "persecution" based on Defendant's purported religious beliefs; (3) a permanent injunction that the Court would order Defendant to take affirmative steps, including implementing policies and procedures, to prevent the recurrence of future discriminatory conduct; and (4) a preliminary injunction ordering Defendant to reinstate Plaintiffs' memberships, allowing Plaintiffs' use of the swimming pool and access to medical benefits. Doc. No. 38 at 7–9. Notably, the Declaratory Judgment Act is merely

a procedural device that does not create substantive rights or a cause of action. *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746, 752 n. 3 (5th Cir. 1996) (citing *Exxon Corp. v. Burglin*, 4 F.3d 1294, 1302 (5th Cir. 1993)).

As discussed in detail below, Plaintiffs have alleged discrimination based on Ms. Joganik's gender identity pursuant to Section 1557 of the Affordable Care Act.

> Section 1557 prohibits discrimination and the denial of benefits on the basis of race, color, national origin, sex, age, or disability "under any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a). Section 1557 expressly incorporates four federal civil rights statutes, which outline the protected grounds of discrimination: race, color, and national origin (under Title VI); sex (under Title IX); age (under the ADEA); and disability (under the Rehabilitation act). *Id.*; *see also Se. Pa. Transp. Auth. v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 696 (E.D. Pa. 2015) (holding that the standard and burden of proof for a discrimination claim under Section 1557 changes depending upon the type of discrimination alleged and should be drawn from the relevant statute listed in 42 U.S.C. § 18116(a)). Accordingly, a plaintiff bringing a Section 1557 claim must essentially plead a corresponding civil rights statute predicate.

*Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 952 (D. Minn. Sept. 20, 2018).

Essentially, Section 1557 incorporates long-standing anti-discrimination laws and applies them to healthcare. Therefore, a Section 1557 claim for discrimination on the basis of sex dictates that Title IX is the relevant statute. [44] *See* 42 U.S.C. § 2000e-5(g) (Title IX remedies provision); *Cannon v. Univ. of Chi.*, 441 U.S. 677, 709, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (holding private right of action under Title IX for injunctive or equitable relief existed); *see also Rumble v. Fairview Health Servs.*, Case No. 14-CV-2037 (SRN/FLN), 2015 WL 1197415, at *7 n. 3 (D. Minn. Mar. 16, 2015) (concluding that Section 1557 provides a private right of action because each incorporated statute does so).

---

[44] *See infra* at 20. "Section 1557 provides that an individual shall not on the basis of . . . sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance. 42 U.S.C. § 18116(a)."

Neither party cited to, and the Court does not find, any controlling authority that directly addresses a challenge to a plaintiff's standing to bring a Section 1557 claim based on gender-identity sex discrimination. However, *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 954 (D. Minn. Sept. 20, 2018), is instructive. In *Tovar*, an insured employee, brought a discrimination action against her employer and the healthcare plan's administrator under the Affordable Care Act, arising from the denial of coverage for her son's gender reassignment surgery. *Id.* The court considered whether she had standing to assert a claim under Section 1557, both for her out-of-pocket healthcare expenses and the emotional distress related to her efforts to "secure medically necessary treatment for her son." *Id.* at 955. The court held that Tovar did not have standing because her "only cognizable injur[y] in fact" was her previously reimbursed out-of-pocket expenses, and that her "emotional harm was not sufficient to convey standing for a parent to seek damages caused by a violation of a child's rights." *Id.* Finally, the court also held that Tovar's son had Article III and statutory standing to pursue his claim because he "ha[d] an interest in being treated equally and not discriminated against on account of his gender identity," and that he suffered harm after "being denied access and receiving delayed access to medically necessary care." *Id.* at 956.

Defendant appears to argue that a plaintiff's standing to bring a Section 1557 claim for sex discrimination is analyzed through the same framework as a Section 1557 claim for disability-based discrimination. Considering Defendant's argument as true, Plaintiffs have met their burden as to Ms. Joganik. The plaintiffs in the authorities cited by Defendant brought discrimination claims based on a facility's alleged non-compliance with the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA") or Section 504 of the Rehabilitation Act as incorporated in Section

1557.[45] The courts in those cases found that a plaintiff's lack of standing was primarily based on the plaintiff's allegation that she had only visited the facility once or would like to return to the facility sometime in the future without alleging a specific plan to return. *See, e.g.*, *Deutsch v. Annis Enterprises, Inc.*, 882 F.3d 169, 174 (5th Cir. 2018); *see also Defenders of Wildlife*, 504 U.S. at 564 (holding that "someday intentions" without "concrete plans" do not support finding of "actual or imminent injury").

However, an ADA plaintiff can adequately allege standing for injunctive relief in a disability-based discrimination case by demonstrating that there is a "substantial risk" that the injury will occur. For example, in *Crawford v. Hinds Cty. Bd. of Supervisors*, 1 F.4th 371 (5th Cir. 2021), the court found standing for equitable relief when a wheelchair bound citizen had a substantial risk of being called for jury duty again and the architectural barriers that prevented him from previously serving amounted to a systemic exclusion that presented as an ongoing harm. *Id.* The plaintiff in that case had been called for jury duty four times over a seven-year period. *Id.* at 377. Likewise, an ADA plaintiff can satisfy her burden to demonstrate the requisite likelihood of future injury either by showing that she intends to return to the facility at issue and is consequently likely to reencounter a discriminatory barrier,[46] or, alternatively, by showing that she is deterred from visiting the subject facility by the presence of discriminatory architectural barriers.[47]

---

[45] "The ADA and the Rehabilitation Act generally are interpreted *in pari materia*." *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011).

[46] *See Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 582 (S.D. Tex. Feb. 27, 2014) (holding that an ADA tester who went to a public accommodation as both a tester and a patron and planned to return to such accommodation had standing under the ADA).

[47] *See Betancourt v. Federated Dep't Stores*, 732 F. Supp. 2d 693, 708 (W.D. Tex. Aug. 10, 2010) ("The fact that the disabled person is being deterred from visiting an establishment they would otherwise visit, even if infrequently, is an ongoing, present injury."); *see also Frame v. City of Arlington*, 657 F.3d 215, 236 (5th Cir. 2011) (citing 42 U.S.C. § 12188(a)(1) ("[A] person with a disability [need not] engage in a futile gesture if such person has actual notice that a person or organization covered by [the ADA] does not intend to comply with its provisions")).

14

Here, Plaintiffs allege that Defendant's discriminatory conduct has been ongoing since, at least, December 2012. *See* Doc. No. 38 at 2.  Plaintiffs further allege that because of Defendant's cancellation of their membership, Defendant continues to deny them access to medical care and facilities based on Ms. Joganik's gender identity. Doc. Nos. 38 at 2; 70 at 3. Plaintiffs are not required to continuously subject themselves to Defendant's alleged discrimination to establish standing. "Standing requires alleged misconduct, not proven misconduct." *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 870 (5th Cir. 2000). Plaintiffs have adequately alleged a judicially cognizable injury-in-fact that is causally related to burdens imposed by Defendant's alleged on-going refusal to set Ms. Joganik's breast exam and denial of access to Defendant's facilities. Because an injunction issued by this Court ordering Defendant to reinstate Plaintiffs' membership and schedule Ms. Joganik's medical exam would redress Plaintiffs' alleged injury, the Court concludes that Plaintiffs have carried their burden of establishing standing as to Ms. Joganik. However, as discussed in detail below, because Plaintiffs solely alleged discrimination based on Ms. Joganik's gender identity, the Court concludes that Plaintiffs have not established standing as to Ms. Anthony.

Accordingly, the Court recommends that Ms. Anthony's claims for declaratory and injunctive relief be dismissed.

**B.  Defendant's Motion to Dismiss Under Rule 12(b)(6)**

Defendant also seeks dismissal of Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Preliminarily, Plaintiffs cite several statutes and constitutional authority in their amended complaint. However, construed liberally and with all reasonable inferences drawn in favor of Plaintiffs, the pleadings do not allege any facts that would support a claim pursuant to Title VI of the Civil Rights Act of 1967 ("Title VI"); the Age

Discrimination in Employment Act ("ADEA"); Title IX of the Education Amendments of 1972 ("Title IX"); Section 504 of the Rehabilitation Act ("Section 504"); Title VII of the Civil Rights Act of 1964 ("Title VII"); or the Thirteenth and Fourteenth Amendments to the U.S. Constitution. For the reasons discussed below, these claims should be dismissed with prejudice, and only Ms. Joganik's claim under Section 1557 of the Patient Protection and Affordable Care Act ("ACA") or ("Section 1557") should proceed.

### 1. Rule 12(b)(6) Challenge to the Title VI of the Civil Rights Act of 1964 Claim

Plaintiffs' complaint includes references to Title VI. *See generally* Doc. No. 38. Defendant contends that Plaintiffs' complaint does not set forth a viable claim under Title VI. Doc. No. 56 at 8. Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Here, Plaintiffs' attempted Title VI claim fails the first element because they do not plead any facts alleging discrimination based on their race, color, or national origin. Accordingly, the Court recommends that Plaintiffs' Title VI claim be dismissed with prejudice.

### 2. Rule 12(b)(6) Challenge to the ADEA/ADA Claim

Plaintiffs' complaint also references the "Age Discrimination of the Civil Rights Act" and the "Age Discrimination Act of 1975." Doc. No. 38 at 1–2. Defendant interprets Plaintiffs' complaint as asserting an ADEA claim. Doc. No. 56 at 9. Defendant contends that this claim should be dismissed because Plaintiffs fail to allege either an employment relationship or set forth facts to establish Plaintiffs as members of the protected category, *i.e.*, that either Plaintiff is over the age of forty. *Id.* at 8–9. Plaintiffs' complaint asserts that Defendant discriminated against them under "the Age Discrimination of the Civil Rights Act" because of their sex or gender. Doc. No. 38 at 1.

Regardless of which age discrimination statute Plaintiffs intended to cite, their complaint is not sufficiently plead as to either.

Under the Age Discrimination in Employment Act ("ADEA"), an employer may neither (1) "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to ... compensation, terms, conditions, or privileges of employment, because of such individual's age" or (2) "discriminate against any of [its] employees ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA]." 29 U.S.C. § 623(a), (d). The ADEA provides a private right of action. *Id.* § 626(c). Similarly, the Age Discrimination Act prohibits any program or activity receiving federal financial assistance from discriminating on the basis of age. *See* 42 U.S.C. § 6102.

Here, Plaintiffs' ADEA claim necessarily fails for the same reasons the Court ordered Plaintiffs to replead the Title VII claim contained in the original complaint—Plaintiffs fail to allege any facts that would allow the Court to infer an employment relationship existed between either of the Plaintiffs and Defendant. *See* Doc. No. 10 at 2. Accordingly, Plaintiffs' ADEA/ADA claim should be dismissed with prejudice.

### 3.  Rule 12(b)(6) Challenge to the Title IX Claim

Plaintiffs' complaint includes several references to Title IX. *See generally* Doc. No. 38. Defendant argues that Plaintiffs have failed to plead sufficient facts to support a cause of action. Doc. No. 56 at 9. Title IX provides that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a).

Here, Plaintiffs' attempted Title IX claim fails because they do not allege that they sought instruction from an educational program at Defendant's facility. Therefore, the Court recommends that Plaintiffs' Title IX claim be dismissed with prejudice.

### 4.   Rule 12(b)(6) Challenge to the Section 504 of the Rehabilitation Act Claim

Defendant argues that Plaintiffs' purported claim under Section 504 must fail because they have not pled sufficient facts to support a claim for relief. Doc. No. 56 at 10. Plaintiffs assert that Defendant discriminated against them under Section 504 because of their sex or gender. Doc. No. 38 at 1. Plaintiffs further state that Ms. Joganik is "at high-risk [of a] heart attack and possible death[.]" *Id.* at 5.

"To state a prima facie case of discrimination under § 504, a plaintiff must allege: (1) that she is a qualified individual with a disability; (2) that she has been excluded from participation in, denied the benefits of, or subjected to discrimination under the [d]efendant's program solely because of her disability; and (3) that the program in question receives federal financial assistance." *Doe v. Steward Health Care Sys. LLC*, No. 4:18-CV-00394, 2018 WL 4233816, at *9 (S.D. Tex. July 31, 2018); 29 U.S.C. § 794(a).

Here, Plaintiffs do not allege sufficient facts to meet the second element. Plaintiff Joganik states that her "[d]isability is a[n] [e]nlarged heart with open valve[.]" Doc. No. 70 at 1. She also adds that she "joined the pool" to be near a doctor if her heart stops while swimming. *Id.* However, Plaintiffs fail to plead any facts asserting that Defendant's alleged discrimination was based solely on Plaintiffs' disability. Because disability-based discrimination is essential to a claim under Section 504, the Court does not reach the merits of the additional elements here. Accordingly, Plaintiffs' Section 504 claim necessarily fails and should be dismissed with prejudice.

### 5.  Rule 12(b)(6) Challenge to the Title VII Claim

Plaintiffs' claim under Title VII fails for the same defect contained in Plaintiffs' original complaint. *See* Doc. No. 10 at 2. Title VII of the Civil Rights Act was enacted "to assure equality of *employment opportunities* by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974) (emphasis added). Plaintiffs plead no facts which would allow the Court to infer that an Employer/Employee relationship existed between Plaintiffs and Defendant. Because Plaintiffs do not complain of discrimination against them as employees of Defendant, Plaintiffs' Title VII claim necessarily fails and should be dismissed with prejudice.

### 6.  Rule 12(b)(6) Challenge to the Thirteenth or Fourteenth Amendments to the U.S. Constitution Claims

Plaintiffs also fail to state a cognizable constitutional claim under the Thirteenth or Fourteenth Amendments. To the extent Plaintiffs are asserting a violation of a constitutional right, Plaintiffs must point to a federal law that provides them with a cause of action for an alleged violation of their constitutional rights and identify the specific constitutional rights that were violated. The Thirteenth Amendment does not provide a direct cause of action against private parties. "Section 2 of the Thirteenth Amendment explicitly reserves for Congress the task of enforcing—through 'appropriate legislation'—the prohibition on slavery, and thus bars private suits in federal court to enforce Section 1 of the Amendment." *Nattah v. Bush*, 770 F. Supp. 2d 193, 204 (D.D.C. 2011) (citing *Holland v. Bd. of Trustees of Univ. of the Dist. of Columbia*, 794 F. Supp. 420, 424 (D.D.C. 1992)) (internal citation omitted). As to the Fourteenth Amendment claim, Plaintiffs have failed to allege that Defendant is a state actor or otherwise show how the claim is applicable. Therefore,

Plaintiffs' claims under the Thirteenth or Fourteenth Amendments to the U.S. Constitution should be dismissed with prejudice.

### 7.  Rule 12(b)(6) Challenge to the Section 1557 of the Affordable Care Act Claim

Plaintiffs' Section 1557 claim centers around allegations that Defendant impermissibly discriminated against them "on the basis of sex" as defined by Title IX and incorporated in Section 1557 of the Patient Protection and Affordable Care Act. More precisely, they allege that Ms. Joganik's gender identity is the basis for Defendant's violative conduct. Defendant argues that the Court should dismiss Plaintiffs' Section 1557 claim. First, because Plaintiffs failed to allege that they sought medical care from a health program or activity that receives federal funds, and second, the lack of certainty as to whether Section 1557 provides for discrimination claims based on gender identity discrimination. The Court will first address the viability of gender identity-based discrimination under Section 1557.

### i.  *Viability of a Gender-Identity Discrimination Claim Under Section 1557*

Section 1557 provides that an individual shall not on the basis of race, color, national origin, sex, age, or disability be "excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance. . ." 42 U.S.C. § 18116(a). "Section 1557 expressly incorporates four federal civil rights statutes, which outline the protected grounds of discrimination: race, color, and national origin (under Title VI); sex (under Title IX); age (under the ADEA); and disability (under the Rehabilitation Act)." *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 952 (D. Minn. 2018). Further, Section 1557 explicitly provides that the "enforcement mechanisms provided for and available under each statute shall apply for purposes of violations . . ." 42 U.S.C. § 18116(a).

Consequently, a plaintiff bringing a Section 1557 claim must "essentially plead a corresponding civil rights statute predicate." *Tovar*, 342 F. Supp. 3d at 952.

As discussed above, Plaintiffs allege discrimination based on Ms. Joganik's gender identity. The relevant question, therefore, is whether Title IX's prohibition against sex discrimination protects against discrimination based on gender identity.[48] At this time, the Fifth Circuit has not spoken on whether discrimination on the basis of sex encompasses discrimination based on gender identity in the context of Section 1557. However, other circuits and numerous district courts have considered the precise question at issue and have held that "Section 1557's nondiscrimination requirements encompass gender identity discrimination." *Tovar*, 342 F.Supp.3d at 953 (collecting cases) (citing *Prescott v. Rady Children's Hosp.-San Diego*, 265 F. Supp. 3d 1090, 1098-1100 (S.D. Cal. 2017) (holding that Section 1557 extends to claims of gender identity based on its plain language)); *Flack v. Wis. Dep't of Health Servs.*, Civ. No. 18-309, 328 F. Supp. 3d 931, 940–50, 2018 WL 3574875, at *12-13 (W.D. Wis. July 25, 2018); *Rumble v. Fairview Health Servs.*, Civ. No. 14-2037, 2017 WL 401940, at *3 (D. Minn. Jan. 30, 2017)). Further, Title VII, and by extension Title IX, recognize that sex discrimination encompasses gender-identity discrimination. *See Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 207 L.Ed.2d 218 (2020); *see also Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011) ("A person is defined as transgender precisely because of the perception that his or her behavior transgresses gender stereotypes.").

Though yet unsettled by the Fifth Circuit, assuming *arguendo* that Plaintiffs may bring a Section 1557 claim based on Ms. Joganik's gender identity, the Court next turns to the question of whether Plaintiffs have sufficiently alleged their claims of discrimination on the basis of sex.

---

[48] *See* 20 U.S.C. § 1681 ("No person in the United States shall, on the basis of sex … be denied the benefits of, or be subjected to discrimination ...").

### ii.   Sufficiency of Plaintiffs' Section 1557 Claim

Defendant asserts that even if Section 1557 provides protection against gender identity discrimination, Plaintiffs have failed to adequately plead that Defendant is a covered entity providing a health program or activity receiving federal funding, and consequently, Plaintiffs' claim must be dismissed. Doc. No. 56. at 11. Preliminarily, Plaintiffs' complaint does not sufficiently plead that Ms. Anthony experienced discrimination on the basis of sex. Plaintiffs allege no facts which would allow the Court to infer that Defendant discriminated against Ms. Anthony based on her sex. Therefore, only the purported discrimination against Ms. Joganik based on her gender identity is at issue. Whether Ms. Joganik can ultimately succeed on her claim of discrimination is not at issue at the pleading stage.

> A plaintiff states a viable claim for sex discrimination under Title IX, and by extension Section 1557, by plausibly alleging: (1) the defendant is a healthcare program that receives federal financial assistance; (2) the plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination in the provision of healthcare services; and (3) the latter occurred on the basis of sex.

*C.P. by & through Pritchard v. Blue Cross Blue Shield of Illinois*, No. 3:20-CV-06145-RJB, 2021 WL 1758896, at *4 (W.D. Wash. May 4, 2021).

Here, Plaintiffs adequately (if somewhat vaguely) argue that Defendant is a healthcare program that receives federal financial assistance. *See* Doc. No. 38 at 3 ¶ 3. Accepting Medicaid and Medicare constitutes federal financial assistance for § 1557 claims. *Rumble v. Fairview Health Servs.*, No. 14-CV-2037 SRN/FLN, 2015 WL 1197415, at *13 (D. Minn. Mar. 16, 2015). Further, the Court takes judicial notice of the fact that Defendant's website states that Defendant's facility accepts Medicaid and Medicare. [49] FED R. EVID. 201(b). Thus, Plaintiffs have sufficiently alleged that Defendant is a healthcare program receiving federal funding.

---

[49]*Insurance Plans*, UTHealth East Texas Rehabilitation Center, https://uthealthrehab.com/insurance-plans (last visited Sept. 20, 2021); Pls.' Show Cause, Doc. No. 70 at 3.

As to the remaining elements, Plaintiffs assert multiple conclusory allegations that Defendant excluded, denied benefits to, and discriminated against them due to Ms. Joganik's gender identity. Plaintiffs assert that: (1) Defendant refused to set an appointment for Ms. Joganik to have a medically necessary breast exam and required her to speak to an employee who did not respect her gender identity;[50] (2) Defendant "misgendered" Ms. Joganik, even when she had a hospital identification tag labeling her gender as female;[51] (3) Plaintiffs have been consistently mistreated for six years at this facility;[52] and (4) Defendant forced them to leave the facility's swimming pool, causing them to be deprived of medical therapy.[53] These allegations, taken as true and in the light most favorable to Plaintiffs, do not plausibly demonstrate that Plaintiffs are entitled to relief under Section 1557. As discussed above, Plaintiffs do not plead any facts as to Ms. Anthony, and Plaintiffs' complaint does not comport with the requirements of Federal Rule of Civil Procedure 8 as to Ms. Joganik.

The Fifth Circuit has repeatedly stated courts need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions in reviewing a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Rios v. City of Del Rio,* 444 F.3d 417, 421 (5th Cir. 2006) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"). Further, Federal Rule of Civil Procedure 8 demands that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The primary purpose of Rule 8 is to give the defendant fair notice of the claims against him. *See Simmons v. Jackson*, Case No. 3:15-CV-1700-D, 2016 WL 7647038, at *2 (N.D. Tex. Nov. 10, 2016). The "underlying purpose" of Rule 8 is to "[e]liminate the prolixity

---

[50] Pls.' Fourth Amend. Compl., Doc. No. 38 at 2.
[51] Pls.' Fourth Amend. Compl., Doc. No. 38 at 3.
[52] Pls.' Fourth Amend. Compl., Doc. No. 38 at 2.
[53] Pls.' Fourth Amend. Compl., Doc. No. 38 at 1.

in pleadings and to achieve brevity, simplicity, and clarity." *Vanderbol v. State Farm Mut. Auto Ins. Co.*, No. 4:19-CV-119-SDJ, 2020 WL 6866393, at *3 (E.D. Tex. Nov. 23, 2020) (Jordan, J.), *aff'd*, No. 20-40875, 2021 WL 2577611 (5th Cir. Mar. 1, 2021) (quoting *Gordon*, 602 F.2d at 746). Nevertheless, *pro se* litigants are generally given an opportunity to address deficiencies. *See Eason v. Thaler*, 14 F.3d 8 (5th Cir. 1994).

Here, Plaintiffs have already been given multiple opportunities to amend their pleadings. The previous rulings in this case, however, did not reach the issue of whether Plaintiffs had stated a sufficient claim for discrimination under Section 1557. Granting a *pro se* litigant an opportunity to replead is not required if a plaintiff has pleaded her best case. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam). However, it is unclear from Plaintiffs' response whether Ms. Joganik has pleaded her best case or whether there are any material facts she would include in an amended complaint if given yet another opportunity. *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009).

Accordingly, the Court recommends that Defendant's motion to dismiss the Section 1557 claim be denied as to Ms. Joganik. The Court further recommends **Ms. Joganik** be given one last opportunity to amend the complaint, **limited in scope to her Section 1557 claim.**[54]

---

[54] Plaintiff must set forth a short and plain statement of facts supporting her claims so that both the Court and Defendant can understand her allegations. To be clear, the Court does not need additional lengthy submissions. The Court is in receipt of all of Plaintiffs' submissions and has thoroughly reviewed the statements and information contained therein. Ms. Joganik's amended complaint shall instead be a clear and concise statement identifying her claims against Defendant and which facts support those claims. If Ms. Joganik chooses to so file, she shall do so in accordance with the following directives:

    1. Each paragraph shall contain only one factual allegation;
    2. The factual allegations set forth in numbered paragraphs, shall, where possible, be organized in chronological fashion;
    3. Each paragraph shall be short and concise and shall state:
        a. What is alleged to have occurred;
        b. Where possible, the date and location the action is alleged to have occurred;
        c. Where possible, the names of Defendant's employees that are responsible for the alleged action; and
        d. How the alleged action is related to a violation of Plaintiff's Section 1557 rights.

## RECOMMENDATION

It is hereby **RECOMMENDED** that Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. No. 56) be **GRANTED IN PART** and that all claims **except** for Ms. Joganik's claim under Section 1557 be **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). It is further **RECOMMENDED** that Ms. Joganik be allowed to amend the complaint **as to her Section 1557 claim only**.

Within fourteen days after receipt of the Magistrate Judge's report, any party may serve and file written objections to the findings and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b). A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after service shall bar that party from de novo review by the District Judge of those findings, conclusions, and recommendations, and except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Services Auto. Assn.,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 14th day of December, 2021.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE